UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **25-CR-20297-BECERRA/TORRES**

18 U.S.C. § 371
18 U.S.C. § 982(a)(7)

UNITED STATES OF AMERICA

vs.

ERNESTO DAVILA,

    Defendant.
_____/

FILED BY **BM** D.C.
**Jun 27, 2025**
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

### The Florida Medicaid Program

1. The Florida Medicaid Program ("Medicaid") was a partnership between the state of Florida and the federal government that provided health care benefits to certain low-income individuals in Florida. The benefits available under Medicaid were governed by federal and state statutes and regulations. Medicaid was administered by the Centers for Medicare and Medicaid Services (CMS) and the Agency for Health Care Administration ("AHCA"). Individuals who received benefits under Medicaid were commonly referred to as Medicaid "recipients."

2. Medicaid was financed with both federal and state funds and was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Health care providers seeking to bill Medicaid for the cost of related benefits, items, and services were required to apply for and receive a "provider number." The provider number allowed a health care provider to submit bills, known as "claims," to Medicaid to obtain

reimbursement for the cost of health care benefits, items, and services provided to Medicaid recipients.

4.      Medicaid permitted these providers to submit claim forms electronically.  The health insurance claim forms required the provider to provide certain important information, including: (a) the Medicaid recipient's name and identification number; (b) the identification number of the doctor or other qualified health care provider who ordered or provided the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item, or service; and (e) the date upon which the benefit, item, or service was provided to or supplied to the recipient.

5.      When a claim was submitted to Medicaid, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicaid program.  The provider further certified that the services and health care items being billed were medically necessary and were in fact provided as billed.

6.      Medicaid generally paid a substantial portion of the cost of the health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers.  Payments were typically made directly to the health care provider rather than to the Medicaid recipient.

7.      Medicaid reimbursed for mental health treatment including "psychosocial rehabilitation services."  Psychosocial rehabilitation ("PSR") services consisted of mental health counseling in a group setting to improve a person with a mental disorder's ability to perform the

2

activities of daily living or to improve their ability to perform a job. The mental disorders treated in this manner included depression and social anxiety disorder. Medicaid allowed providers to bill for PSR services provided in a group setting.

8. Medicaid would reimburse the providers of PSR services, called "community behavioral health services providers" for performing an initial mental health evaluation, developing a treatment plan, and providing up to 480 hours of PSR services to a Medicaid recipient per fiscal year.

### The Defendant, Related Individuals and a Related Company

9. Florida Behavior Health, Incorporated ("Florida Behavior") was a Florida corporation, located at 2099 West 76th Street, Hialeah, Florida, that purported to provide medically necessary PSR services to Medicaid recipients.

10. Defendant **ERNESTO DAVILA** was a resident of Miami-Dade County and the listed owner and president of Florida Behavior.

11. Sergio Da La Noval was a resident of Miami-Dade County and a beneficial owner of Florida Behavior.

12. Patient 1, a resident of Miami-Dade County, Florida, was a Medicaid recipient.

13. Patient 2, a resident of Miami-Dade County, Florida, was a Medicaid recipient.

### Conspiracy to Offer and Pay Health Care Kickbacks
### (18 U.S.C. § 371)

From in or around March 2019, through in or around June 2021, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ERNESTO DAVILA,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly,

combine, conspire, confederate, and agree with Sergio De La Noval and with others known and unknown to the United States Attorney, to commit an offense against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(B), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to order and arrange for any service and item that could be paid for, in whole and in part, by a Federal health care program, that is, Medicaid.

## Purpose of the Conspiracy

14. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes to Medicaid recipients to induce them to serve as patients at Florida Behavior; (b) submitting and causing the submission of claims to Medicaid for PSR services that Florida Behavior purportedly provided to Medicaid recipients; (c) causing Medicaid to make payments to Florida Behavior as a result of such claims; (e) concealing the payment of the kickbacks; and (f) diverting the proceeds of the scheme for the defendant and his co-conspirators' personal use and benefit, the use and benefit of others, and to further the conspiracy.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

15. Sergio De La Noval and other co-conspirators offered and paid kickbacks and bribes to Medicaid recipients for serving as patients at Florida Behavior with **ERNESTO DAVILA's** knowledge.

16.     **ERNESTO DAVILA** and other co-conspirators caused Florida Behavior to submit approximately $1,264,974 in claims to Medicaid for PSR services that Florida Behavior purportedly provided to the recruited Medicaid recipients who were paid kickbacks and bribes.

17.     **ERNESTO DAVILA** and other co-conspirators used the proceeds from the scheme for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.     On or about March 13, 2019, **ERNESTO DAVILA** added himself as President of Florida Behavior in the corporate records in the State of Florida.

2.     On or about December 5, 2019, **ERNESTO DAVILA** signed the enrollment documents that were submitted to Medicaid for Florida Behavior.

3.     On or about October 26, 2020, a co-conspirator submitted a PSR services claim to Medicaid on behalf of Florida Behavior for Patient 1, to whom Sergio De La Noval had paid a cash kickback in order to induce the patient to receive such treatment.

4.     On or about November 7, 2020, a co-conspirator submitted a PSR services claim to Medicaid on behalf of Florida Behavior for Patient 2, to whom Sergio De La Noval had paid a cash kickback in order to induce the patient to receive such treatment.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 982(a)(7))

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **ERNESTO DAVILA**, has an interest.

2. Upon conviction of Title 18, United States Code, Section 371, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7).

3. The property subject to forfeiture as a result of the alleged offense includes, but is not limited to a sum which represents the gross proceeds traceable to the commission of the federal health care offense alleged in this Information and which may be sought as a forfeiture money judgment.

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

TIMOTHY I. ABRAHAM
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: **25-CR-20297-BECERRA/TORRES**

v.

ERNESTO DAVILA,

               Defendant.
_____/

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- [x] Miami
- [ ] Key West
- [ ] FTP
- [ ] FTL
- [ ] WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I [x] 0 to 5 days
   - II [ ] 6 to 10 days
   - III [ ] 11 to 20 days
   - IV [ ] 21 to 60 days
   - V [ ] 61 days and over

   (Check only one)
   - [ ] Petty
   - [ ] Minor
   - [ ] Misdemeanor
   - [x] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Kathleen M. Williams   Case No. 25-cr-20276
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
Timothy Abraham
Assistant United States Attorney
FL Bar No.       1143729

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** ERNESTO DAVILA

**Case No:** _____

Count #: 1

18, United States Code, § 371 and 42, United States Code, § 1320a-7b(b)(2)(B)

Conspiracy to Offer and Pay Health Care Kickbacks
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000 fine or twice the gross gain or loss from the offense

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. **25-CR-20297-BECERRA/TORRES** |
| | ) | |
| ERNESTO DAVILA | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Michael Mirer, Esq.
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*